UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LESLIE G. KINNEY,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CENTRAL INTELLIGENCE<br>AGENCY,<br><br>　　　　　　Defendant. | CASE NO. C16-5777 BHS<br><br>ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Central Intelligence Agency's ("CIA") motion for summary judgment. Dkt. 15. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I.　BACKGROUND**

On August 3, 2015, Leslie G. Kinney ("Plaintiff") submitted a FOIA request to the CIA seeking "the personnel file, and any and all other documents" related to James Harold Nichols ("Nichols"). Dkt. 16-1. On September 3, 2013, the CIA responded to the FOIA request, explaining that (1) their "processing included a search for records that

would reveal an openly acknowledged Agency affiliation . . . and did not locate any responsive records," and (2) they could "neither confirm nor deny the existence or nonexistence of records responsive to [the] request." Dkt. 16-2. On September 15, 2015, Plaintiff administratively appealed the CIA's decision. Dkt. 16-3. On April 21, 2016, Defendant denied the appeal. Dkt. 16-5.

On September 12, 2016, Plaintiff filed his complaint alleging that Defendant has wrongfully refused to provide information pursuant to a request under the Freedom of Information Act, 5 U.S.C. § 552 et seq. ("FOIA"). *Id.* On December 20, 2016, the CIA answered. Dkt. 6. On March 1, 2017, the CIA moved for summary judgment. Dkt. 15. On March 15, 2017, Plaintiff responded. Dkt. 18. On March 24, 2017, the CIA replied. Dkt. 20. On March 28, 2017, Plaintiff filed a surreply. Dkt. 21.

## II. DISCUSSION

Plaintiff seeks to compel the release of any CIA personnel files and all other documents related to Nichols. Dkt. 1. The CIA moves for summary judgment on the basis that it has performed an adequate search revealing that there are no records that would demonstrate an openly acknowledged CIA affiliation with Nichols and that any records that would reveal the existence or nonexistence of a classified CIA affiliation are protected from disclosure under 5 U.S.C. §§ 552(b)(1), 552(b)(3).

**A.   The CIA's Glomar Response**

The "Glomar" response originated from a case dealing with a FOIA request pertaining to the *Hughes Glomar Explorer*, an oceanic research vessel. *See Phillippi v. C.I.A.*, 546 F.2d 1009 (D.C. Cir. 1975). In that case, the requestor issued a FOIA request

to determine if the vessel was owned by the United States. *Id.* As a result of the case, the D.C. Circuit established that, when the "existence or nonexistence of the requested records was itself a classified fact exempt from disclosure under Sections (b)(1) and (3) of FOIA," an agency could refuse to either confirm or deny the existence of requested records and issue a public affidavit that explains, in as much detail as possible, the basis for the agency's claim. *Id.* at 1013.

Under 5 U.S.C. § 552(b)(1), material classified as secret in the interest of national security or foreign policy may be exempt from disclosure. Under 5 U.S.C. § 552(b)(3), material specifically exempted by statute is also exempt from FOIA requirements. "The CIA bears the burden of proving the applicability of the exemption." *Berman v. C.I.A.*, 501 F.3d 1136, 1140 (9th Cir. 2007). "In evaluating a claim for exemption, a district court must accord 'substantial weight' to CIA affidavits, provided the justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of CIA bad faith." *Minier v. C.I.A*, 88 F.3d 796, 800 (9th Cir. 1996) (quotation omitted). "When the Agency's position is that it can neither confirm nor deny the existence of the requested records, there are no relevant documents for the court to examine other than the affidavits which explain the Agency's refusal." *Wheeler v. C.I.A.*, 271 F. Supp. 2d 132, 141 (D.D.C. 2003) (quoting *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Wolf v. C.I.A.*, 473 F.3d 370, 373–74 (D.C. Cir. 2007)).

In this case, the CIA has issued a Glomar response and explained that "[r]esponding to the substance of [Plaintiff's] request could jeopardize the clandestine nature of the Agency's intelligence activities or otherwise reveal previously undisclosed information about CIA sources, capabilities, authorities, interests, relationships with domestic or foreign entities, strengths, weaknesses, and/or resources." Dkt. 17 at 9. Particularly in the context of human sources, persons "can be expected to furnish information to the CIA only when they are confident that the CIA can and will do everything in its power to prevent the public disclosure of their cooperation." *Id.* Moreover, disclosure of a source's identity can expose family and relatives to retaliation from CIA targets and place in jeopardy every person with whom the source has had contact. *Id.* at 10. "As such, confirming or denying the existence of records on a particular individual, like Mr. Nichols, reasonably could be expected to cause serious damage to U.S. national security by indicating whether or not CIA maintained any human intelligence sources related to an interest in the subject of the request." *Id.*

The Court agrees that 5 U.S.C. § 552(b)(1) plainly applies to the requested records. The CIA's affidavit reasonably explains how confirming the existence or nonexistence of the records sought would reveal an unacknowledged human intelligence source, thereby (1) jeopardizing the Agency's ability to perform future intelligence activities with other human sources, and (2) exposing any potential sources that may have grown out of the initial source's service. Plaintiff's briefing admits that he seeks records on the very premise that they would reveal information regarding "a variety of unknown clandestine assignments" in which Nichols participated during and after World War II,

including "a clandestine recovery operation ordered by the highest levels of the U.S. Government that has been kept secret to this day." Dkt. 18 at 2. Accordingly, the CIA's invocation of 5 U.S.C. § 552(b)(1) is both plausible and logical.

Plaintiff advances two arguments for releasing the requested records, notwithstanding the fact that acknowledging the existence or nonexistence of an agency affiliation with Nichols would reveal information about a human intelligence source. First, Plaintiff argues that the CIA has already officially disclosed the existence of the requested information. Dkt. 18 at 9–10. Second, he argues that the age of the requested records, if they exist, shows that no harm can come from releasing them. *Id.* at 12–18.

Plaintiff's first argument focuses on a conversation that he had with a CIA representative where he was informed that, before the Agency could release any information related to his request, it would need to communicate with other agencies to obtain their joint approval. Dkt. 18 at 9–10. Plaintiff attempts to construe this statement as an official acknowledgment by the CIA that the records he has requested exist. "[W]hen information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990). However, while the statement made to Plaintiff by a CIA representative could be construed as evidence that such records exist, it clearly falls short of the "official" documented acknowledgment necessary to override an otherwise valid exemption. *See id.*; *Am. Civil Liberties Union v. Dep't of Def.*, 752 F. Supp. 2d 361, 366 (S.D.N.Y. 2010).

Additionally, Plaintiff's second argument, based on the age of the requested information, does not convince the Court that the CIA has improperly invoked the § 552(b)(1) exemption. Plaintiff argues that "the release of material related to Nichols, an operative assigned to some unknown agency 70 plus years ago has no current value to CIA activities," and that the CIA has failed to explain how it does. Dkt. 18 at 12. However, contrary to Plaintiff's assertions, the CIA affidavit addresses specifically how the harms associated with disclosing the identity and existence of a human source remain, regardless of the requested records' age. Dkt. 17 at 10. In particular, the CIA's affidavit focuses on the need to protect the appearance of strict confidentiality when dealing with the identities of human sources. Dkt. 17 at 9. The principle that disclosing such information may continue to be harmful to national security long after the death of a human source is captured in the express exemption of confidential human intelligence sources from the fifty-year automatic declassification provision of Executive Order 13526. Exec. Order No. 13526 § 3.3(h)(1), 75 Fed. Reg. 707 (2009). Courts have routinely accepted the CIA's logical justification for its invocation of the Glomar response when dealing with record requests regarding alleged, long-deceased human sources. *See Wolf v. C.I.A.*, 473 F.3d 370, 377 (D.C. Cir. 2007) ("[T]he need to assure confidentiality to a foreign source includes neither confirming nor denying the existence of records even decades after the death of the foreign national."); *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 763–64 (D.C. Cir. 1990) ("[T]he Government has a compelling interest in protecting both the secrecy of information important to our national security and *the*

*appearance of confidentiality* so essential to the effective operation of our foreign intelligence service.") (emphasis in original, quotation marks omitted).

Because the existence of the records that Plaintiff seeks is exempted from disclosure under § 552(b)(1), the Court need not address the CIA's claimed exemption under § 552(b)(3).

**B.     Adequacy of Search**

Plaintiff also argues that the CIA's search of records was inadequate because the agency did not search through classified information for records that would be responsive to his request.[1] Dkt. 18 at 7–8. However, as in *Wheeler*, "the adequacy of a search is irrelevant to this 'Glomar' response because the issue is whether the Agency has given sufficiently detailed and persuasive reasons for taking the position that it will neither confirm nor deny the existence or non-existence of any responsive records." *Wheeler*, 271 F. Supp. 2d at 141. The Court has already considered the CIA's supporting affidavits and concluded that 5 U.S.C. § 552(b)(1) was properly invoked in response to Plaintiff's request to the extent that Plaintiff seeks the disclosure of classified information about a purported former human intelligence source. Because the existence of such records is properly classified, the Court need not consider whether the CIA adequately searched through classified information to locate responsive documents.

---

[1] The parties do not dispute that the CIA's search of unclassified records was adequate.

### III. ORDER

Therefore, it is hereby **ORDERED** that the CIA's motion for summary judgment (Dkt. 15) is **GRANTED**. The Clerk shall enter judgment in favor of the CIA and close this case.

Dated this 3rd day of May, 2017.

BENJAMIN H. SETTLE
United States District Judge